case number 221937. Good afternoon. May it please the Court. Yan-Qiang Li, Federal Defenders for Michael Campbell. It seems like a complicated appeal. Fortunately for us, there's a simple question at the heart of the appeal that's dispositive. And that's whether under the modified categorical approach, which this Court is familiar with, the Shepard documents show that Mr. Campbell necessarily admitted to intentionally causing injury. And we respectfully submit that none of those documents necessarily show that, and that, in fact, the entire Shepard records are consistent with injury caused recklessly. And therefore, this Court should vacate the judgment and remand for re-sentence. The Shepard documents here are really very simple. It's just the information, the plea agreement, and then the allocution. The information doesn't really have anything that identifies the nature of the assault here. And the plea agreement adds a little bit more, but the more part is really in the allocution. So I think everybody agrees that the focus here is on the allocution. And that allocution, again, does not show that Mr. Campbell intentionally caused injury. What he said was that the principal things he said was he knowingly participated in activity directed for Vicar purposes, right, to maintain his position in the gang. That's the motive requirement of Vicar. And that he knew that a gun would be used and that, in fact, the gun was discharged. That's really the gist of it. And the fact that he also said that he participated in the murder. And all of those things are consistent with an assault under 120.05, subsection 4, which is assault using a deadly weapon that recklessly causes injury. And because the record is consistent with that. Well, what does participation in the murder of Mr. Jones mean? Well, participation, so the murder, so as the Court knows, murder itself is sort of a, is a broad definition, right? In fact, it itself is divisible, right? So the fact that he says murder, which is exactly the same term used in MAP, by the way, doesn't mean that he committed intentional murder, right? The government wants to sort of leverage his use that he participated in the murder to, that that means that he admitted that he participated in the intentional causation of death. And that's not true. Does the term murder, are there any other applications other than the felony murder rule under which saying I participated in a murder wouldn't imply intent? Yeah, I think there's actually a couple more. I mean, so the felony murder is not just a small exception. It's actually quite a big exception, right? Because that's what this Court said in MAP, that an unintentionally caused homicide during a felony murder qualifies as a vicar murder. But there's, we're not, you're not contending that this allocution was admitting to felony murder. When he says I participated in the murder. So, Your Honor, you know, my job here is to, so the test is whether the Shepard documents necessarily show that the defendant admitted to intentional causation of injury. And we're saying that it doesn't.  So there are two ways that murder could be, so in addition to felony murder. But that's a very big category.  It's, in fact, in this case, if you think about it, he's, you know. So are you saying that when he says I participated in the murder, he might be saying I participated in a felony murder or in something of that sort? Is that what you're saying? Exactly. Exactly, Your Honor. I think that, and, you know, this categorical approach is kind of absurd because it's constantly saying that some things which are very likely to be one way because they are not certain are not. Is that the point? That's right, Your Honor. Look, I mean, I understand. I understand that the intuitions and common sense are against me, right? But you all know as well, in fact, Judge Loyer, you wrote the concurrence in Morris on this point, that the modified category approach often leads to counterintuitive outcomes because it's a very strict approach based only on these documents and based only on whether the elements are admitted, right? There is a difference between practical certainty and metaphysical certainty, and you, I think, are, but maybe I'm wrong, asking us to embrace a version of beyond a doubt, beyond a shadow of a doubt, that's got to be necessarily the case. Is that? That is the standard, Your Honor. That's the language all through the Supreme Court cases. It tailors demand for certainty. It's all over Shepard, right? Shepard, again, is the quintessential modified category approach case in which defendants committed. Am I correct? And I appreciate what you're saying and also your candor. But Mr. Morris, who actually killed Jordan Jones, he did it, as I recall it, as I understand it, at the behest. That was the evidence, at the behest of your client. Your Honor, whether that's the evidence or not, it's irrelevant, right? It's in the PSR. No, no, no. Is there evidence to support that? That's the government's proper view of what happened, yes. But, again, we all know the modified category approach is a very funny way of looking at things, right? You know, in Shepard, the Supreme Court vacated the ACCA conviction because there's a possibility the defendant could have been burgling, you know, house votes, right, which is not true. We all know that wasn't true. The defendant never claimed that he was doing anything other than burgling residences or buildings. But, nonetheless, that's the way the modified category approach works. So let me just ask how to interpret this. My associate and I engaged in this offense in retaliation for a previous incident with another group. Is this offense that he's talking about, the murder, that he's just – Well, see, this is – it's not very clear, right? Okay. In fact, this offense, if you want to say, he's pleading guilty to a – just so we take the big picture. He's pleading guilty to just a base 924C. So when he's saying this offense, you know, he's really saying this offense, my possession of a gun, you know, that's – But that wouldn't make sense that he would possess a gun and retaliate. That's a nonsensical – So, right. So then the other candidate for this offense is the assault, right? It's the assault – it's the Vicar assault. And the reason why he's allocating about the retaliation and the motive, right, is because the Vicar assault requires this unusual motive element, right? So – so let's say I participated in this assault for the purpose of – in retaliation. But that just – that just brings us to the question that we're trying to answer. What assault? It doesn't – it doesn't help the government. We're back to – we're back to this question of, well, which of those 120.05 subsections is relevant? What is the difference in the plea here and in Morris? Okay. In Morris? I will say two things about that. So, you know, Morris – so what this Court held in Morris was that Morris's Shepard documents, right, showed that Morris committed intentional assault, right? It's not some fact-finding about what really happened, right? So let's get that clear. But there's two huge differences between what Morris said and what Mr. Campbell said. Morris said two things that – that led this Court to conclude that he committed intentional assault. He said that he possessed a gun and agreed to shoot Jones for the purpose of maintaining his position in the organization and that he, in fact, shot Jones. I mean, you know, that – that's conclusive as to Jones' – you know, that the assault there was intentional. Mr. Campbell's allocution is that a fire – was in the passive voice, right? That a gun was discharged and that he knew a gun would be used. Okay? And that it does result in – right? But a felony murder is – would fit those – that allocation perfectly. Go ahead. Well, I'm just – I'm trying to get back to this retaliatory motive. And I understand the theory is the reference to this offense is this assault to which he's pleading guilty. So the theory has to be that it makes sense to think that he did something recklessly in retaliation for his prior – No, Your Honor. No, Your Honor. So this is exactly – this is exactly this Court's case – this Court's decision in Mapp from 1999. The – the motive element of Vicar, right, why he committed the offense, goes to either the overall conduct or the underlying conduct. So in Mapp, there was a robbery that resulted in an – in an unintentional death charged as a felony murder. And the defendant's argument to this Court was, oh, well, that can't serve as a Vicar predicate because, as Your Honor sort of intuits, a Vicar purpose sort of requires intentional action and not reckless conduct. But what this Court said is, no, no, no. It's okay if you – so long as you commit the robbery, right, the predicate felony with the Vicar purpose, even if the death is unintentionally caused or recklessly caused. And that's what this Court held in Mapp. And that's what we're asking this Court to do exactly the same thing here. And I want to sort of just – you know, I think the problem here is that the word purpose is used, okay, to describe this Vicar because, you know, under the model penal code, purpose is sort of this hyper-intentionality, right? But here, it's really kind of misuse of the word purpose. It's really motive, right? Vicar is a very special statute because it transforms regular state crimes into Federal crimes. And the thing that makes them Federal is the motive element, right? Motive to affect – To maintain your position. In the interstate enterprise, right, in the racketeer enterprise. And the elements clause is about how the offense was committed, not why the offense was committed. As part of the Shepherd review, can we also consider his – did he not also allocate to Count 1? This is Count 1. I think Count 2 is – I'm sorry, is it Count 2? Count 2 is the robbery and – The armed robbery? Yeah, but that's not – it's not before this court because the court didn't grant the COA on that. And there are also two completely separate offenses, right? Two completely – I think more than a year and a half apart. I realize this isn't before this court today, but I'm just curious. If you win, does that mean that your client is then subject to – that the sentence gets vacated, it goes back, the plea gets vacated, and your client is subject to all of the charges that were dropped in connection with – Yes, Your Honor. Theoretically, I believe that would be possible. He would also be subject to the – you know, he still has the 1924C count, which is the one you're referring to, the robbery. Again, he pled to a discharge, 1924C discharge on the robbery, right? Here he only pled to the 1924C possession again, all right? So again, we're sort of talking about this idea that this is very much of a negotiated plea, right? And what he negotiated was he – even though we all acknowledge that Jones was murdered, right? Murdered could mean felony murder, but – and a gun was discharged, but he was nonetheless allowed to plead to a lesser included 1924C pure possession offense and a possession – a gun possession based on a Vicar assault and not a Vicar murder. So he was really pleading down, right? And that's what the plea agreement, that footnote that the government – that's what it reflects. He's pleading down from what is really – and this is the other question, what a murder could be. He's pleading down from a 1924J offense, really, to a 1924C. I mean, we're all familiar with – if it's a 1924C offense and someone dies, that's a 1924J. A 1924J – Well, obviously, he's – I mean, you look at the indictment, then you look at the superseding information. He's pleading down, so – He's right. He's pleading down. And so – but, you know, this is also sort of the unfairness of what the government is trying to do here. He pled down to an assault possession, and now the government is trying to use this term in their murder. So this goes back to my question about Mr. Morris, who is – and maybe also to your point about how counterintuitive this might be, because the result might well be, if you prevail, that your client has a significantly lower exposure sentence than Mr. Morris. No, Your Honor. Am I wrong about that? You're wrong about that because of this. Because there's another – just so that we understand, we're in this land of make-believe in some ways, because what happened to Mr. Morris was that his assault – his 1924C based on assault was affirmed by this Court, but this Court also vacated his other count in 1924C because it happened to have been negotiated as a 1924C based on attempted hijack robbery. Right? Which is now not a crime. So he got the benefit, sort of the ball bounced his way on that one, so he went back to resentencing on one count, too. Right? So, you know, there's a lot of weird balances in here, and we're not trying to say that these are the, you know, the Justice Big J, you know, required outcomes. We're saying that these are the – this is the outcome required by the – there's a clean application of the modified categorical approach. So, Judge Calabresi, do you have any questions? No. That's fine. All right. My question was a difference with this and Morris, and yes. Thank you. Okay. Yeah, I do want to emphasize that, right, so that, you know, the modified categorical approach is a record-specific approach, and that means, obviously, a defendant-specific approach, because everybody's record is different. Yes. Can I – I'm sorry. Just one more. I'm really trying to focus on the narrow question we're asking here. Yes. We're looking at the allocutional trigger. What did he admit? And I get your point that the Vicar motive is a motive.  Not a mens rea as to the assault. But I'm trying to, as a practical matter, figure out how, when you have a motive to assault somebody, you can then recklessly injure them. Oh, okay. Again, it's not my – you know, it's – the records have to show that he necessarily admitted the intentional assault. But I can easily see a scenario in which that's the case. Sure. Let's say that, you know, he and a bunch of Confederates, you know, went to confront and retaliate against Jones with guns, okay, perhaps to scare him, maybe even to attempt to rob him, right, so it's directed at him. But then a gun goes off recklessly – accidentally, and he's recklessly killed. That's entirely consistent with the allocation. It's a murder, right? It's a felony murder. It's a murder. He participated in a murder. He used a gun. There was a gun used. It was discharged. And he did this. He did the assault with Vicar motive in mind to – in retaliation to promote his position in the game. Perfectly consistent with that, and that requires a ruling in our favor. What does retaliation mean, then? Well, retaliation is – Why are you retaliating unless you want to hurt someone? Well, yes. Let's say – well, you're retaliating. That's the assault part, right? Because it's going to confront the person. Maybe to – No, that is the intent, to hurt someone. Why isn't that necessarily – Well, it could be – no, no. It could be – Respect it. It could be the motive. It could be to scare. It could be to threaten. It could be to rob. Not necessarily to kill. He's not saying rob. He's saying I want to retaliate. Yeah. To a previous incident with another group. He doesn't say he's retaliated. He killed him in retaliation. Can we consider the Morris – any part of that as a separate material? No, it's just – No, Your Honor. Absolutely not. In this case. Absolutely not. Thank you. Thank you very much. You reserve some time for rebuttal, Mr. Lee. We'll hear from the Governor. May it please the Court. My name is Remy Grossbard. I represent the United States in this appeal. Your Honors, the Government focuses – agrees with the defense that the focus here is on the allocution. And we disagree on how it should be read. And I want to start with the actual language of the allocution for Your Honor to consider. On or about July 5th, 2009, in the vicinity of Monticello Avenue, I participated in the murder of Jordan Jones. I knew that a firearm would be used during the commission of the offense. And, in fact, the firearm was discharged. My associate and I engaged in this offense in retaliation for a previous incident with another group. This offense allowed my associate and I to maintain our position with our group. Okay. And so Mr. Lee just made the argument that you heard that we are all aware of with respect to this allocution, which I agree is the center of the focus, that we can't necessarily tell that he intended to physically injure Mr. Jones. Now, someone else may have intended that, but from just the four corners of this allocution, how are we able to tell with a requisite level of certainty? Your Honor, at this stage of the modified categorical approach analysis, it is the court's job to read the allocution naturally and to determine which elements of which offense it lines up to. It is not the same type of reading that the court applies at the next step of the modified categorical approach or what the court does at the categorical approach, which is to look at the legal term murder and to then determine whether that is part of a divisible or indivisible statute. But doesn't your argument prove too much? You know, it makes perfectly good sense, but we've had hundreds of categorical approach cases in which the very possibility that it was reckless or that it was felony or it was something else has led us to say too bad. Now, you know, I don't understand why Chief Justice Rehnquist came up with a categorical approach and then we tried to help by making it modified. But there we are. That is, my problem is, frankly, I'd love to come out your way, but how do I do it without creating a situation, in all honesty, that covers any number of cases that came out the other way? Your Honor, I believe that in this case you can look at the very specific language that was used at the plea colloquy. You can look at the plea agreement. And nowhere in any of these documents, in any of the Shepherd documents, is there any reference to anything except an assault and a murder that further defines that assault. It would be... So I can agree with you about that. And you heard some of my questions directed to your friend on the other side. But, you know, Savage, we seem to have embraced or adopted an approach to reading the Shepherd materials that is arguably more than a natural reading. It says it's got a record, the materials, got to establish with certainty that the defendant necessarily, sort of a double of whammy, admitted the elements of the predicate offense. And, you know, look, I don't think that we could possibly have met any form of philosophical or metaphysical certainty. There are practical parameters to this. But it seems that we've also put, in one sense, although I think that the standard of review is that he's, that Mr. Campbell's got the burden, but in one sense we put it to either, depending on how you see it, the government or the district court to provide more of a record. Your Honor, I, I, I agree that that is the standard laid out in Savage. But I, I submit that that standard is met in this case. It would make no sense at all for what Mr. Campbell has allocated to with the felony murder in this case. He says, I participated in the murder. The murder was retaliatory. I, my associates and I. So if you get out of the word, I participated in a felony murder. Would that have clarified things for the government, for us? I, I participated in a felony murder. But, Your Honor, that's. No, no, no. Just answer that question. I, I am not sure that given that the rest of the elements of Vicar assault that requires that the assault be in furtherance of the purpose of to retaliate and to maintain one's position in a group. I'm not sure that that could ever actually be the case. So you're taking the Fourth Circuit's position, which we have trended away from. I. Thomas, I might actually agree with Thomas, actually. But too bad I'm in the Second Circuit and not in the Fourth Circuit. So we are where we are. And we seem to have not adopted that. And, and again, just would you please answer my question. And it's, it's okay. You know, either way I can take it. If he had said, if he had allocated that I participated in the felony murder of Jordan Jones. What's your response to that? If he had allocated to participating in the felony murder of Jordan Jones and we don't accept the reasoning of the Fourth Circuit and Thomas, then, Your Honor, I, I think we would be in a very different world. And the outcome would be different. But that is. You're not hanging your hat on the State alone. You couldn't hang your hat alone on the statement that my associate and I engaged in this offense in retaliation for a previous incident. I, I think my point is that these two things would actually never happen together. He, an allocution would not be that he participated in a felony murder and that the purpose of that felony murder was to engage in a retaliation because that simply makes no sense, Your Honor. One does not participate. Let's say the felony, let's say the actual crime that he was participating in was, for example, an escape. No one would allocute to, to intentionally participating in an escape for the intentional purpose of maintaining his standing in a group, but then incidentally somebody was accidentally killed in that. The retaliation would be, would be for the escape and it wouldn't be for, for the killing. And here it is clear that the retaliation was for the killing. Counsel, could he be tried in the State for murder and have the evidence that was brought here, brought before him and end up being sentenced to life imprisonment in the State? That is, you know, this is, looks bad because some things which would seem to be applicable may not be applicable before, because of our cases. And that may be because, frankly, the government botched the allocution. They could have gotten an allocution which was clearer if its job had been done well. That's too bad, but that still is. But my question is, is this then really as disastrous as you are suggesting, or does, are there, in fact, very easy other ways in which this man can be sentenced to all that he received and more? Your Honor, I'm not sure what the result would be if this went to the State, but I will say two things on what I think the disastrous result would be if this case goes the opposite direction of Morris. First, this conviction in this case is for the exact same conduct that Morris was convicted of and his conviction was affirmed on appeal. It was the exact same murder, the exact same 924C. And so this entire, the entire difference here would turn on the vagaries of the precise words that Mr. Campbell used. So, look, I have both in one sense defended the categorical approach, but I also see the many problems with it, which is that it leads to results that are sometimes quite puzzling when you take that approach and the categorical approach, the unmodified approach, seriously. And I very much appreciate that Mr. Morris has a different result, at least with respect to this particular issue. But in Morris, the allocution, I mean, he says, I shot him. Very different from here. And so there was a level, the argument is on the other side, I think it's right. There was a level of certainty that we can attribute when we read the Morris allocution and you would agree that it's a little, it's not quite as clear here as in Morris. Your Honor. Would you agree with that? Respectfully, I disagree. I believe that this allocution is extremely clear. He participated in a murder. I would like to also make clear for Your Honors that in the entire plea, colloquy, in the whole plea, it's actually a point that's raised in the defense brief. There's no crime as to count one, even the word assault that is used. The only word that is ever used to describe Mr. Campbell's conduct is a murder. And he says, I participated in the murder. I knew that a firearm would be used during the commission of the offense. That is a murder. And, in fact, the firearm was discharged. My associate and I engaged in this offense, that is, the murder, in retaliation for a previous incident with another group. This offense, again, the murder, because we have no other offenses that are even available to us anywhere in this record, allowed my associate and I to maintain our position with our group. It — So, Mr. — I'm puzzled by your response. Mr. Morris says, I shot him. That can't — that's a little bit different from I showed up and my associate shot him. But — That's — no, that's a felony murder. And that — Your Honor, Mr. Morris could theoretically have been — one could read Mr. Morris's plea allocution if we were using the same hyper-technical standard that the defense is proposing to theoretically have been referring to a reckless shooting. But that wouldn't have made sense there. And if you turn back to the Morris decision, the Court actually engages in a rather short and to-the-point assessment of whether Mr. Morris's plea colloquy met the standard. It wasn't this tortured back and forth of what all of the words he said could have possibly meant. It's — this is what he said, and it matches the intentional — And I'm not trying to — I'm trying to understand how you could — how you could not distinguish Morris in the allocution there, which — where he says, I shot Jordan Jones on July 6, 2009, and — after which Jones died. OK? You — he doesn't say I shot him by accident. It's very clear. And, look, this, for maybe intentionally, maybe not, the allocution here, which in my experience was likely crafted beforehand and read by Mr. Campbell, is a little bit more nuanced. And in the nuance is the potential lack of certainty. That is what I think we're talking about. And you want us to read I participated in the murder as the intentional murder, because you think that that is the only way to swear — the only way to swear the reference to in retaliation for a previous incident is to view that as an intentional murder. Your Honor, that combined with the fact that nowhere else in the plea colloquy, nowhere else in any of the Shepard documents, is there any — is there any reference to anything that could have given rise to a felony murder? But what you are saying is that is what we think is most likely, hugely likely, enormously likely. But the question is, if necessity is a part of it, then we're back to the problem. Of course, we think it's extremely likely, et cetera, et cetera. But that's the thing. And that's not your fault, although a different allocution would have made life much easier for us. Can I ask you to address — your colleague, Rossella, sort of was pushing for, like, tell me a scenario that didn't involve intent as it related to the assault, and he offered one, right? The scenario was, show up with my friend, knew he'd have a gun. We were doing this to retaliate for what had happened. Our goal was to scare him. I participated because the gun went off and he got shot, but not admitting that that's part of the — that was my intent going into it. Why isn't that a scenario to which we could conclude he pled based on the words in the allocution? I think that the word murder, and that he keeps referencing the word — he keeps referencing the offense and the murder and saying that he engaged in the offense, and the only word that describes the offense in this little paragraph of the allocution is a murder, makes clear, confirms, and truly necessarily so, leaving no possibilities that what he was going to do was committing a murder, an intentional killing with a retaliatory purpose. I understand that the — that some of these hypotheticals that could arise as to how a crime could possibly be committed occurs at the next step of the — of the modified categorical approach. That is how the categorical approach is reviewed. But I do — I do urge the Court to see that the defense is — is sort of mixing the way the Court does that analysis with the — with the step two analysis. When you refer to the second step or the next step, what is that step? The next step that I'm referring to is when the — when the Court looks to see whether — when you — when you have, for example, the — when you have the actual crime, the legal crime that has been the crime of conviction, and then you go back and see if that crime could be committed in any possible way that wouldn't trigger the — a crime of violence. And I think that is — that standard for how the Court does that is sort of being slipped into this. So you're saying that we are looking — that we are analyzing the certainty and necessity requirements at the wrong step? That is — We're employing that at the wrong step. The type — It's not to read — it's not in connection with reading the allocution, the Shepard material. It's in connection with determining whether the offense actually maps off. These types of hypothetical analyses that we're going through, yes, I believe that is — that is a different step. And when we're reading the Shepard materials, we're really trying to find out what actually happened here, and so that we can then determine what is the applicable, the relevant — Well, we're trying to find out what actually happened or what the defendant actually fled to. I mean, I guess that's —  That's what I'm struggling with. I 100 percent agree that we are a little bit mixing the, like, legal question of whether a particular state law offense necessarily involves violence, but rather than almost what I would describe as a factual question of what it was he was allocuting to. But in trying to figure out what he's allocuting to, if we can think of scenarios that are the state statute that you're pointing to, but instead would map onto a different one, the one with recklessness, how do we — how do we process that? Your Honor, first of all, I think your words were more precisely chosen than mine. Yes, you are — we are trying to figure out precisely what he pleaded to. And I think — I apologize. I've missed the last part of the question. I think you draw an important distinction. We're not trying to — we're not doing this categorical approach at this stage. We're doing the review of the Sheppard materials. I'm just trying to understand what our standard is. We're trying to figure out what these words map onto, what he's admitted to as far as the underlying state law predicate that then is the predicate for the vicar, right? So what's the — if it's not, we have to be pretty darn sure because, you know, his words might be consistent with a lesser state charge, which would then have different implications. What is the standard that we apply in reading those materials? The standard, if you look back to the Supreme Court case in Descamps and to Mathis, it's really just to identify the crime of conviction. There is Second Circuit cases where I — as Judge Lohe referenced in Savage, there's in Reyes and in Rosa that the court does say that it must be sure necessarily that the elements have been met. But it — The question is the elements of what? Of what offense? Right. You're saying one — he's saying — I mean, Mr. Lee is asking us to say that the vicar assault was predicated on penal law section 120.054, right? And you are saying it's not that. It's — I can't even remember what it was, but 120.101. Or 125.02, I believe. Oh, two, which is in Morris, I believe. Yes. And is there an argument that, again, to go back to a question that I posed to your friend, Mr. Lee, that we can look at Morris to determine what they — what the plea is here, what the offense of conviction pursuant to the plea is here? Your Honor, I'm not aware of authority that would allow the court to look at the documents from Morris. But you're asking for a natural reading of the plea allocution to determine that he is pleading to — not to subsection 4, but to another subsection. I'm asking for a natural reading of the plea allocution that understands that what the defendant is doing is using his own words to explain what happened, which is a very different inquiry than what the legal statute is at the next step of the modified categorical approach analysis. And none of the cases that we have discussed today do this type of incredibly hyper-technical hypothesizing analysis of what different words might mean. Are there cases, though — I mean, it's true that action is usually around this sort of almost mathematical exercise of comparing one statute as it's written on the books to another. Are there cases where the action was really about what did he — what did the defendant plead to? Or is this kind of an unusual case that doesn't — we don't have much to give us guidance? I don't think this is the only — I think that this is not typically the issue that comes up, because typically at this point the prosecution would probably specify what the underlying state statute would be. So here we're in a little bit of unusual territory. But I think that this — a slightly different question, slightly different statute, but the same type of question was asked in Rosa, where the court did end up concluding that it could not find that the defendant had necessarily used a real firearm in the  But it looked at the words of the plea colloquy there, and it didn't do this very But isn't the basis of a categorical approach a notion that we don't want to look at what actually happened? Because if we looked at what actually happened, any number of defendants would come in and make pleas that they were not actually doing this as violently or as nastily and so on. And that's why the Supreme Court stuck us with this. And it stuck us with something which said, don't look at what happened. Don't listen to people telling you what happened. Look at whether the words fit necessarily. And I don't like it, but if that is so, much of your argument about how we ought to read sensibly seems to me to go out the window. Your Honor, I think at this part of the modified categorical approach, when you are looking at the Shepard documents, I do think that one can read the plea colloquy in the way that I have been suggesting and not in this super hyper-technical way. There is not, and on the other side, they have not pointed to any Supreme Court case or Second Circuit case that demands this type of tortured reading of the defendant's words. And frankly, it makes quite a lot of sense that when you're looking at the words a defendant says to admit the conduct that he does, which is what one does when reading the Shepard documents, that you're not engaging in this, you're not at that point applying an analysis of whether a statute is divisible or indivisible, and you're just looking at his word. He participated in a murder. Thank you, Your Honor. Thank you. Thank you very much. So just a few things. One is, you know, the government is asking the Court to revisit and overturn two decades of Supreme Court law and this Circuit's law. It is abundantly clear. It's abundantly clear that under the— Why don't you address, at least for me, this question that our analysis doesn't come in with respect to the necessity conclusion, doesn't come in until after we've read— No, Your Honor. That's absolutely right. Well, the government said it's absolutely wrong. Having used my question, it could have been a great question for you. No, I understand you— But that there's a—we read the plea allocution in a particular way and we don't sort of parse it in a hyper-technical way. The categorical nature of our analysis comes in when we determine that he pled guilty to this, and does this then map on? I understand, Your Honor. I understand there's two different steps. But the modified category approach is just a variant of the category approach, right? It's still an elements-based approach. The entire approach, even the idea that you can only use Shepard documents, right? Think about how bizarre that is, right? It's a very limited universe of documents that the Court can look at, because we're not concerned about what actually happened. We're concerned about— You're not asking us to change that. Yeah. The government is asking you to reject two decades of Supreme Court law. Shepard, Mathis, Moncrief, Descamps, they all say this. And this Court has said, the Court's language from Savage that Your Honor quoted is from the Supreme Court. The Court reviewing such a claim must conclude with certainty that the Shepard documents necessarily show a defendant committed a qualifying offense. So it's not, I'm not making this up. The Supreme Court and you have said this. And this idea that somehow there would be some sort of bizarre situation if the same incident, right? If the incident of Mr. Jones' death could be construed differently in different cases, what — there's nothing unusual about that at all. One set of facts could be sliced a bunch of different ways in terms of deciding someone's culpability. And certainly in the context of a negotiated plea, right? One person can say — can be forced to admit to an intentional murder. But the other person as part of a plea only has to admit to a possession of a gun in furtherance of an assault, right? And the government also, and I think you know this argument well, says you really can't square one part of the elocution, the reference to Prince of Spain murder, with these other parts of the elocution. What's — and I don't know that you quite answered that. I think it's perfectly consistent, Your Honor. Again, in fact, the government's concession that if it had said felony murder, then we'd be in a different world I think concludes this case. Because the term murder itself is ambiguous. It could — it includes — we know that murder includes both intentional murder and felony murder. So the fact that he said murder, undefined, means that he could also have said that you should construe that as either intentional or felony murder. And therefore, we win. And this idea that — this idea that the government says, oh, everything is about murder, that's the only offense that we're talking about here, that's really missing the forest for the trees, right? Think about — he's pleading to a 924-C, a gun possession. Right? So that's the first thing. And the gun possession, the predicate, the COV predicate is an assault. Right? So we're talking about assault and gun possession. The murder is not even an element here, right? Sorry, Your Honor. Could you just remind me, in Savage, and I know the language that you're relying on about the breath, what was — what was the debate about whether or not — I can't remember, Your Honor. Was it a case that involved different understandings of the import of the defendant's allocution versus the legal consequence of the underlying statute to which he allocated? I don't know for sure, Your Honor. But this idea that, you know, the court has — so again, Shepard, the original — the original case that essentially set up this idea that under the modified category, of course, we have to limit our conservative documents and all that, the defendant pled to Massachusetts burglary. Right? And the police reports show that he — I mean, he burgled a bunch of houses. And he never denied that he burgled houses. Right? And burglary itself, in that context, obviously, you know, we all know that he most likely committed a burglary, a true burglary of a building. But the Supreme Court said, no, that's not enough. Right. But he — but he allocated to a specific — I mean, part of the problem is there was a specific statute that he allocated to. And that fact wasn't in dispute. Nobody was saying, no, he didn't really allocate to this or that. You're saying it's comparable because — Well, we're even better off than that. He didn't allocate to any — he allocated — he was pleading to a gun possession in furtherance of an assault. Right? Right. Okay. And then the murder is just thrown out there without any identifying statutory statute. So it's even — it's even vaguer, less clear than in Shepard. All right. And, you know, this idea that — and the government is really trying to ask the court, in leveraging the Vicar motive into the intent to cause injury element, is asking the court to follow the Fourth Circuit in Thomas. And that ship has sailed. This court in Morris took a different approach. And there is a circuit split on this. The Supreme Court in Delegati recognizes that the Fourth Circuit in Thomas has a different approach than the Second Circuit does. Right? We wouldn't even be here, in fact, if the government were right. Right? If the Vicar motive elements were enough, we would never even have a — we wouldn't need an inquiry into the second step of the Morris. Right? The Vicar motive is a substitute for the intent. This Court has rejected that. This Court has a different analysis. It's — I mean, just to go back to Savage, it's not even clear that it's — it answers the question necessarily for us, because we said there we need not decide whether the — the one exchange or the judicial record necessarily established with certainty that the charge was narrowed to a sale. I think it was really talking about something different. So you really rely on Morris more than anything. Do you rely on Savage? I'm relying on — I'm relying on the well-established way to approach the — so the other part of the modified category approach, right, is not only that you rely on the Shepard documents and this whole idea of certainty and necessarily, but the flip side of that is that the Court also says that if the record does not show the court with certainty that the defendant necessarily committed a qualifying offense, then the Court has to assume that the offense of conviction is the least serious offense or least culpable alternative, right? The whole — the whole structure of the modified category approach is based on this idea of kind of necessity. It's not about guessing. I mean, this is what Your Honor said at, you know, your concurrence in Morris. There's — there's Sixth Amendment due process concerns. There's also concerns about judicial administration and trying to relitigate many trials of what defendant actually admitted, right? It's an approach that — that we're all stuck with. If — understanding that you — and I'm just going to give you a minute to answer this, but understanding that you think that the government has made a concession, if we were to embrace the government's contention that we should treat this naturally, in other words, could you prevail? Well, yes. I mean, naturally. What does naturally mean? Naturally — to me, naturally, murder is still — murder includes intentional and felony murder. And vicarious assault, you know, could be committed just as a map. Naturally.  Yes, Your Honor. I don't think it's — I don't think it's — I don't even think it's a — it's — it's iniquitous to me. And we don't even have to be there. Don't you have the burden? It's a — Thank you. I have the burden of showing that the legal framework means that the conviction is unlawful. Yes. And that's — and this Court has applied the same category — modified category approach to — in a 2255 motion, in — at least, I think, in the en banc in Scott and in at least one other case. There are several other cases. And, in fact, the government concedes this, okay, that, you know, that this is the same standard that applies whether it's a 2255 or a direct appeal. You've got the burden. Thank you very much. Thank you. The floor is yours.